## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## MACON DIVISION

| | |
|---|---|
| MARY KOERNER, on behalf of herself and all others similarly situated,<br><br>PLAINTIFF,<br><br>AGAINST -<br><br>MERCER UNIVERSITY,<br><br>DEFENDANT. | Case No. 5:24-cv-00083<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff MARY KOERNER ("Plaintiff"), by and through the undersigned counsel, brings this class action against Defendant Mercer University ("Mercer," the "University," or "Defendant"), and alleges as follows based upon information and belief, except as to the allegations specifically pertaining to her, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     This is a class action lawsuit on behalf of all persons who paid tuition and/or fees to attend Mercer for an in-person, hands-on educational services and experiences during the Spring 2020 semester and had their course work moved to online only learning.

2.     Such individuals paid all or part of the tuition for an average yearly tuition that was around $37,508 for undergraduate students, and mandatory fees including $150 facility and technology fees ("Mandatory Fees").

3.     Mercer has not refunded any amount of the tuition or any of the Mandatory Fees, even though it implemented online only distance learning starting in or around March 15, 2020.

1

4.    Because of the University's response to the COVID-19 pandemic, on or about March 15, 2020, the University also stopped providing any of the services or facilities the Mandatory Fees were intended to cover.

5.    In a public release on March 15, 2020, Mercer announced "effective immediately, all classes are suspended until March 23 to provide an opportunity for our faculty to complete the process of transitioning to virtual formats. Beginning March 23, all instruction will be delivered online until April 3."[1] In a follow up release from Mercer's President "it is with tremendous regret that we will not be returning to in-person instruction this semester, but will instead continue offering instruction in all our courses in a virtual format only."[2]

6.    The University's failure to provide the services for which tuition and the Mandatory Fees were intended to cover since approximately March 15, 2020 is a breach of the contracts between the University and Plaintiff and the members of the Class, and it is unjust.

7.    In short, Plaintiff and the members of the Class have paid for tuition for an on-campus, in-person educational experience, and were deprived of those experiences and services without a refund, which constitutes a breach of the contracts entered into by Plaintiff and the Class with the University.

8.    As to the Mandatory Fees, Plaintiff and the Class have paid fees for services and facilities which were simply not provided.

9.    Rather than offering partial refunds, credits, or discounts to students like Plaintiff

---

[1]  https://web.archive.org/web/20200329233335/https://www.mercer.edu/coronavirus/university-communications/message-to-the-mercer-community-from-president-underwood-2/ (last visited March 7, 2024).

[2]  https://web.archive.org/web/20210511233641/https://www.mercer.edu/coronavirus/university-communications/message-to-the-mercer-community-from-president-underwood-3/ (last visited March 7, 2024).

and balance the financial difficulties associated with COVID-19, the University has instead elected to place the financial burden entirely upon its students by charging and retaining the full tuition and full fees when the services the University provided were not the full educational opportunities, experiences, and services that Plaintiff and the Class agreed to or paid for.

10.    Plaintiff does not challenge the University's compliance with the COVID-19 orders that were in place. Rather, Plaintiff challenges the University's decision to retain monies paid by students like Plaintiff and to refuse to offer any refunds, provide any discounts, or apply any credit to Plaintiff's and Class members' accounts when the University failed to provide in-person and on-campus services the students bargained for.

11.    The University's actions are unlawful, inequitable, and unjust.

12.    Plaintiff seeks, for herself and Class members, the University's disgorgement and return of the prorated portion of its tuition and Mandatory Fees, proportionate to the amount of time in the respective semesters when the University closed and switched to online only learning.

## PARTIES

8.    Plaintiff Mary Koerner was an undergraduate student during the Spring 2020 semester. For the Spring 2020 semester, Mercer charged Plaintiff approximately $18,754.00 in tuition, a $150 Facility and Technology Fees, Housing Fees of $2,750.00, a Health Insurance Premium of $996.00, and a Lab fee of $125.00.

9.    Plaintiff Koerner is a resident and citizen of Marietta, Georgia.

10.    Plaintiff Koerner paid tuition and fees for in-person educational services, experiences, opportunities, and other related collegiate services. Plaintiff Koerner has not been provided a prorated refund of the tuition for her in-person classes that were discontinued and moved online, or the Mandatory Fees she paid after the University's facilities were closed and events were cancelled.

11.    Defendant Mercer is a private university in Macon, Georgia that was founded in 1833. The University offers numerous major fields for undergraduate students, as well as a number of graduate programs.

12.    Defendant's undergraduate and graduate programs include students from many, if not all, of the states in the country.  Its campus is located in Macon, Georgia. Defendant is a citizen of Georgia.

## JURISDICTION AND VENUE

13.    This Court has original jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a class action in which one or more of the other Class members are citizens of a State different from the Defendant.

14.    This Court has personal jurisdiction over Defendant because it resides in this District.

15.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1), because Defendant resides in this District and is a resident of the state in which this District is located.

## FACTUAL ALLEGATIONS.

16.    Plaintiff and Class Members paid to attend Mercer's Spring 2020 semesters including tuition and the Mandatory Fees. The Spring 2020 semester started on Jan. 5, 2020 and ended on May 2, 2020.

17.    Tuition at the University was approximately $37,508 per year for undergraduate students, and Mandatory Fees were approximately $150 including facility and technology fees.

18.    Plaintiff and the members of the Class paid tuition for the benefit of on-campus live

4

interactive instruction and an on-campus educational experience throughout the entire Spring 2020 semester.

19.    Plaintiff and the University entered into a contractual agreement where Plaintiff would provide payment in the form of tuition and fees and Defendant, in exchange, would provide in-person and on-campus educational services, experiences, and opportunities.

20.    The University has a long history of providing in person education and on-campus services in exchange for tuition and/or Mandatory fees.

21.    Prior to Plaintiff's enrollment, the University highlighted in marketing materials, advertisements, and other documents that in-person and on-campus educational services were invaluable to Plaintiff's educational experience.

22.    Defendant offered these services to Plaintiff in exchange for her enrollment.

23.    Defendant offered these services to Plaintiff in exchange for her registration of classes during various semesters during her enrollment, including during Spring 2020.

24.    Plaintiff made payments to the University based on promises by Mercer in those documents in lieu of receiving education at other universities, colleges, or academic institutions – or enrolling in online only universities.

25.    During the middle of March 2020, the University announced that all in-person classes were to be suspended and transitioned to the alternative delivery modality of online-only learning.

26.    Throughout March 2020, the University made public announcements adjusting educational services and opportunities that affected Plaintiff and the Class.

27.    The University did not hold any in-person classes from March 15, 2020 through the end of the Spring 2020 semester. All classes from March 15, 2020 through the end of the Spring

2020 semester were only offered in a remote online format with no in-person instruction or interaction.

28.    Most of the services for which the Mandatory Fees were assessed were also terminated or cancelled at or about this time, such as access to University health and wellness facilities, programs or services; fitness facilities; and student events and sports.

29.    In the MyMercer Portal Course Details, when Plaintiff selected courses for Spring 2020, it specifically identified that the University would utilize the following "delivery method" for specific classes: "Classroom" and identified a location by specific campus.

30.    Mercer has not provided reimbursement or refund information regarding tuition or the Mandatory Fees.

31.    Students attending Mercer's Spring 2020 semester did not choose to attend an online-only institution of higher learning, but instead chose to enroll in the University's in-person educational programs – with the understanding that Mercer would provide in-person educational opportunities, services, and experiences.

32.    On its website, in documents available to students (or prospective students) like Plaintiff, and in marketing materials, Mercer markets its on-campus experience and opportunities as a benefit to students.

33.    For example, the University provided students, like Plaintiff, with materials that reflected the following on-campus and in-person services, experiences and opportunities:













34.    On its website, the University touts the benefit of its immersive learning experience, including in statements like the following: "Life at Mercer: Student life goes beyond the classroom – ours Bears balance rigorous academics with membership in a wide range of student organizations

9

and activities."[3]



35.    Mercer also promotes its on-campus and in-person facilities and its benefits in the educational services it provides. For example,



[3] https://www.mercer.edu/life-at-mercer/ (last visited March 7, 2024).

36.    However, that is not what students, including Plaintiff, received during the Spring 2020 semester.

37.    After the University converted to online only learning, the online learning options supplied to Mercer's students were sub-par in practically every aspect as compared to what the educational experience afforded Plaintiff and the members of the Class once was. During the online portion of the Spring 2020 semester, Mercer used programs by which previously recorded lectures were posted online for students to view on their own or by virtual Zoom meetings. Therefore, there was a lack of classroom interaction among teachers and students, and among students that is instrumental in educational development and instruction.

38.    The online formats used by Mercer do not require memorization or the development of strong study skills given the absence of any possibility of being called on in class and the ability to consult books and other materials when taking exams. Further, the ability to receive a Pass-Fail grade rather than a letter grade provides educational leniency that the students would not otherwise have with the in-person letter grading education that was paid for and expected.

39.    Students, like Plaintiff, have been deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique.

40.    Students like Plaintiff were denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms, which are integral to a college education.

41.    Students like Plaintiff were denied access to campus activities and services, which fosters intellectual and academic development and independence, and networking for future careers.

42.    Mercer priced the tuition and Mandatory Fees based on the in-person educational services, opportunities and experiences it promised to provide on campus.

43.    The University has not made any refund of any portion of the tuition Plaintiff and the members of the Class paid for the semesters affected by COVID-19.

44.    The University has not refunded any portion of the Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay.

45.    Plaintiff and the Class members are therefore entitled to a prorated refund of the tuition and Mandatory Fees they paid for the Spring 2020 semester for the remaining days of that semester after classes moved from in-person to online and facilities were closed.

46.    Defendant's practice of failing to provide reimbursements for tuition and Mandatory Fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees, as alleged herein, violates generally accepted principles of business conduct.

## CLASS ACTION ALLEGATIONS

47.    Plaintiff brings this case individually and, pursuant to Fed. R. Civ. P. 23, on behalf of the class defined as:

> All Mercer students who satisfied their payment obligations for the Spring Semester 2020 tuition and/or Mandatory Fees, and who were enrolled in at least one in-person on-campus class (the "Class").

48.    Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

49.    This action has been brought and may properly be maintained on behalf of the Class proposed herein under the criteria of Fed. R. Civ. P. 23 and other statutes and case law regarding class action litigation in the State of Georgia.

50.    The Class is so numerous that joinder of all members is impracticable.  Although

the precise number of Class members is unknown to Plaintiff, the University has reported that an aggregate of 8,500 or more undergraduate and graduate students were enrolled for the 2019-2020 school year. The names and addresses of all such students are known to the University and can be identified through the University's records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

51.     The questions here are ones of common or general interest such that there is a well-defined community of interest among the class members. These questions predominate over questions that may affect only individual members of the classes because Mercer has acted on grounds generally applicable to the classes.  Such common legal or factual questions include, but are not limited to:

a)   Whether the University accepted money from Plaintiff and the Class members in exchange for the promise to provide an in-person and on-campus live education, as well as certain facilities and services throughout the semesters affected by COVID-19;

b)   Whether Defendant breached its contracts with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 15, 2020;

c)   Whether Defendant breached its contracts with Plaintiff and the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after March 15, 2020;

d)   Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide them with an in-person and on-campus live education after March 15, 2020;

e)   Whether Defendant breached the covenant of good faith and fair dealing with Plaintiff and the members of the Class by failing to provide the services and facilities to which the Mandatory Fees pertained after March 15, 2020; and

f)   The amount of damages and other relief to be awarded to Plaintiff and the Class members.

52.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and the other Class members each contracted with Defendant for it to provide an in-person and on-campus live education for the tuition they paid and the services and facilities for the Mandatory Fee that they paid, that the University stopped providing in mid-March.

53.     Plaintiff is a more than adequate class representative.  In particular:

    a)  Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class action litigation;

    b)  Plaintiff's interests do not conflict with the interests of the other Class members who she seeks to represent;

    c)  Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

    d)  Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

54.     Class members' interests will be fairly and adequately protected by Plaintiff and her counsel.

55.     It is impracticable to bring Class members' individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender.  The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

56.     A class action is superior to other available methods for the fair and efficient

adjudication of this litigation.  The damages or financial detriment suffered by individual Class

members are relatively small compared to the burden and expense of individual litigation of their

claims against the University.  It would, thus, be virtually impossible for the Class, on an individual

basis, to obtain effective redress for the wrongs committed against them.   Furthermore,

individualized litigation would create the danger of inconsistent or contradictory judgments arising

from the same set of facts.  Individualized litigation would also increase the delay and expense to

all parties and the court system from the issues raised by this action.  By contrast, the class action

device provides the benefits of adjudication of these issues in a single proceeding, economies of

scale, and comprehensive supervision by a single court, and presents no unusual management

difficulties under the circumstances.

**<u>FIRST CLAIM FOR RELIEF</u>**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and the Class)**

57.    Plaintiff repeats and re-alleges the factual allegations above, as if fully alleged

herein, including those made in paragraphs 1 through 56 above.

58.    Plaintiff brings this claim individually and on behalf of the members of the Class.

59.    By paying the University tuition and the Mandatory Fees for the Spring 2020

semesters, the University agreed to, among other things, provide an in-person and on-campus live

education as well as the services and facilities to which the Mandatory Fees they paid pertained

throughout those semesters.  As a result, Plaintiff and each member of the Class entered into a

binding contract with the University.

60.    Mercer has held that its in-person educational opportunities, experiences, and

services are of substantial value.

61.    Mercer has agreed to provide in-person educational opportunities, experiences, and

15

services to enrolled students.

62.    Mercer has promoted its in-person educational services as being valuable to students' educational experiences and their develop.

63.    In marketing materials and other documents provided to Plaintiff, Defendant promoted the value of the in-person education experiences, opportunities, and services that Defendant provided.

64.    Defendant provided Plaintiff with an acceptance letter that Plaintiff accepted based on the promise of in-person educational experiences, opportunities, and services that Defendant would provide.

65.    In return for enrollment, registration and payment of tuition and Mandatory Fees related to the same, Mercer agreed to, among other things, provide an in-person and on-campus educational services and access to facilities like labs, libraries, study rooms, and other facilities to which the Mandatory Fees paid pertained to throughout the semester.

66.    As a result, Plaintiff and each member of the Class entered into a binding contract with the University.

67.    Plaintiff and each member of the Class entered into a contract to attend Mercer when they accepted the school's offer of enrollment after submitting an application for in-person and on-campus educational services and experiences.

68.    Plaintiff and Class members entered into a contractual agreement with Defendant for the provisions of in-person and on-campus educational services for the Spring 2020 semester, Plaintiff and Class Members viewed the course catalog and course details to make specific course selections prior to registering and paying tuition and Mandatory Fees for those selected courses. Defendant's course catalog constitutes an offer to enter a contractual agreement.

69.    The course catalog and course details provided Plaintiff and Class members with information regarding the courses offered, the instructor, the days and times during which the courses would be held, the delivery method, and the location in which the courses would be held.

70.    For example, in the MyMercer Portal Course Details, when Plaintiff selected courses for Spring 2020, it specifically identified that the University would utilize the following "delivery method" for specific classes: "Classroom" and identified a location by specific campus.

71.    Upon information and belief, other students selected their course schedules because of the delivery method and the course location.

72.    Plaintiff was not provided with a "classroom" delivery method and did not have access to the campus for those classes, labs, libraries, or other educational services.

73.    Terms of the contractual agreement were set forth in publications from Mercer, including on its website and marketing materials, the application for admission submitted by Plaintiff and Class members, the acceptance letters received by Plaintiff and Class members, the course catalog and course listings, MyMercer Portal, and other documents detailing the obligations of both sides.

74.    For example, in the Mercer University Catalog from 2019-2020, the University offered students like Plaintiff the following:

a.    "To offer a variety of intellectual, cultural, recreational and spiritual activities designed to enlarge capacity for improved judgment and moral, ethical and spiritual growth …";

b.    "To contribute campus resources, in partnership with other institutions and agencies, to improve the educational, social and economic development of the community…";

    c.    "Student [Affairs and Campus] life is a vital part of the college experience. When extracurricular activities, programs, and organizations are tied closely to a student's academic experience, the impact on the student's learning can be profound."; and

    d.    Numerous other programs and services that are available in person and on campus.

75.    The terms of the agreement required the following: Plaintiff was to provide payment of tuition and Mandatory Fees, and the University was obligated to provide in-person and on-campus educational services.

76.    Defendant "offered" these in-person and on-campus educational experiences, opportunities, and services.

77.    Plaintiff, like other students, accepted the terms of service for in-person and on-campus educational services in exchange for payment of tuition and Mandatory Fees.

78.    The University has breached its contract with Plaintiff and the Class by failing to provide the promised in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees pertained throughout the semesters affected by COVID-19, yet has retained monies paid by Plaintiff and the Class for a live in-person education and access to these services and facilities during these semesters.

79.    Plaintiff and the members of the Class have therefore been denied the benefit of their bargain.

80.    Plaintiff and members of the Class have performed all of the obligations on them pursuant to their agreement – including by making such payments or securing student loans or scholarships to pay for such education.

81.    Plaintiff and the members of the Class have suffered damage as a direct and proximate result of the University's breach in the amount of the prorated portion of the tuition and

Mandatory Fee they each paid during the portion of time the semesters affected by COVID-19 in which in-person classes were discontinued and facilities were closed by the University.

82.    The University should return such portions of the tuition and Mandatory Fees to Plaintiff and each Class member.

83.    Therefore, the University should return a *pro rata* share of the tuition and Mandatory Fee to Plaintiff and each Class Member that related to those in-person educational services that were not provided after the University shut down on or around March 15, 2020.

<u>**SECOND CLAIM FOR RELIEF**</u>
<u>**UNJUST ENRICHMENT**</u>
<u>**(Pled in the Alternative)**</u>
<u>**(On Behalf of Plaintiff and the Class)**</u>

84.    Plaintiff incorporates the allegations by reference as if fully set forth herein, including those made in paragraphs 1 through 56 above.

85.    By paying Defendant tuition and the Mandatory Fees for the Spring 2020 semester, Plaintiff and the Class Members conferred a benefit to Defendant in exchange for which Defendant agreed to, among other things, provide an in-person and on-campus live education as well as the services and facilities to which the Mandatory Fees they paid pertained throughout those affected semesters.

86.    Defendant has retained the benefits of the amount of tuition and fees[4] that Plaintiff

---

[4] Indeed, colleges and universities must be able to separately account for student payments, as well as financial aid received on an individual student's behalf, as these institutions are frequently required to issue refunds to the government and the student for instances where the student enrolls, but does not complete classes for which the institution has received financial aid payments from the federal government. The Higher Education Act ("HEA"), Title IV, governs federally funded student financial aid programs for college and post-secondary vocational training. *See* 20 U.S.C. §§ 1070–1099 (1990 & 1992 Supp.). The HEA requires that when a student withdraws partway through the enrollment period, the institution must refund a certain portion of the charges to account for its reduced educational obligations toward the student. *Career Coll. Ass'n v. Riley*, 74 F.3d 1265, 1269 (D.C. Cir. 1996). Thus, it is beyond dispute that any college or university

and the Class Members have provided – without providing the benefits that Plaintiff and the Class Members are owed.

87.    For example, Defendant failed to provide Plaintiff and Class Members access to any on-campus facility after March 15, 2020. Yet Defendant assessed Plaintiff and the Class with tuition and fees that covered the cost of upkeep and maintenance of such facilities, services, costs, and expenses.

88.    Plaintiff and the Class were not able to access such facilities or services remotely.

89.    Plaintiff and the Class paid tuition and fees with the expressed understanding that such costs included the in-person classes, services, opportunities, and experiences that Mercer has previously marketed, promoted, or made available prior to COVID-19.

90.    Defendant has been unjustly enriched by Plaintiff and Class Members' payment of tuition and fees.

91.    Despite not being able to provide such services, Defendant failed to provide reimbursements for tuition and fees despite the diminished value of the education and other experiences that it provided, and the reduced benefits associated with the fees.

92.    Plaintiff and members of the Class have sustained monetary damages as a result of each of Defendant's breaches of the covenant of good faith and fair dealing.

93.    It is unjust for Defendant to keep money for services it did not render.

---

receiving any tuition payments through government-provided financial aid must be able to account for what was paid for each individual student. This means that each student's tuition funds must be capable of being separately identified and sequestered, and a claim for those funds can be properly sustained. Moreover, discovery will flesh out more information about the particular accounting practices employed by Defendant.

**THIRD CLAIM FOR RELIEF**
**EXPENSES OF LITIGATION (O.C.G.A. § 13-6-11)**
**(On Behalf of Plaintiff and the Class)**

94.     Plaintiff incorporates the allegations by reference as if fully set forth herein, including those made in paragraphs 1 through 56 above.

95.     Defendant has acted in bad faith and caused Plaintiff and the Class unnecessary trouble and expense by failing to provide services for which Plaintiff and the Class have paid and by failing to refund the tuition and fees paid by Plaintiff and the Class.

96.     Plaintiff and the Class are entitled to expenses of litigation, including reasonable attorneys' fees and costs, pursuant to O.C.G.A. § 13-6-11.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered in favor of Plaintiff and the Class against Defendant as follows:

(a)     For an order certifying the Class under the Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(c)     For damages in an amount to be determined by the trier of fact;

(d)     For an order compelling disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

(e)     For an order of restitution and all other forms of equitable monetary relief;

(f)     For an order awarding expenses of litigation, including reasonable attorneys' fees, costs, and expenses;

(g)     For an order awarding pre- and post-judgment interest on any amounts awarded; and

(h)     For an order awarding such other and further relief as may be just and proper, including injunctive relief and declaratory relief.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: March 11, 2024                    Respectfully submitted,

*/s/ Nicholas A. Colella*
Nicholas A. Colella
Georgia Bar No. 299972
**LYNCH CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, Pennsylvania 15222
Telephone: 412-322-9243
Facsimile: 412-231-0246
nickc@lcllp.com

Michael A. Tompkins, Esq.
Anthony Alesandro, Esq.
LEEDS BROWN LAW, P.C.
One Old Country Road, Suite 347
Carle Place, NY 11514
(516) 873-9550
mtompkins@leedsbrownlaw.com
aalesandro@leedsbrownlaw.com

*Counsel for Plaintiff and Proposed Class*