IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **MARY KOERNER,** *on behalf of herself and all others similarly situated*, <br><br> *Plaintiff,* <br><br> v. <br><br> **MERCER UNIVERSITY,** <br><br> *Defendant.* | **CIVIL ACTION NO.** <br> **5:24-cv-00083-TES** |

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

Before the Court is Defendant Mercer University's Motion to Dismiss [Doc. 11] pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] However, before the Court can reach the merits, it must first address a jurisdictional matter.

Plaintiff Mary Koerner filed this class action against Defendant on March 11, 2024, alleging claims on behalf of herself and the proposed class for breach of contract, unjust enrichment, and litigation expenses. [Doc. 1, pp. 15, 19, 21]. On May 3, 2024, Mercer moved to dismiss the action for failure to state a claim. [Doc. 11, p. 6]. The Court scheduled a hearing to discuss the matter, but just five days before the hearing, Plaintiff filed a Motion to Stay/Continue the Hearing on Defendant's Motion to Dismiss and

---

[1] In its Motion to Dismiss, Defendant notes that Plaintiff's Complaint names Defendant incorrectly. [Doc. 11, p. 1 n.1]. Its correct title is "The Corporation of Mercer University." [*Id.*].

Engage in Limited Discovery [Doc. 21], raising for the first time a concern that her own case may not meet certain requirements to remain in federal court. [Doc. 21, p. 3].

In particular, Plaintiff raised the question of whether her action falls into the "home-state exception" of the Class Action Fairness Act (CAFA), which revokes jurisdiction over class actions in which "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B). Despite averring in her Complaint that "[t]his Court has original jurisdiction under the Class Action Fairness Act," Plaintiff now speculates that because data from the National Center for Education Statistics shows that at least 86% of first-time degree/certificate-seeking undergraduates during the 2019-2020 academic year listed their state of residence as Georgia, the proposed class may fall into the home-state exception. [Doc. 21, p. 3]; [Doc. 21-2, pp. 37–39];[2] *see* 28 U.S.C. § 1332(d)(4)(B). In light of that information, Plaintiff requested 30 days of jurisdictional discovery to resolve the matter.[3] [Doc. 21, p. 5]. The Court thinks that inappropriate at this stage.

Plaintiff's Complaint alleges that this Court has jurisdiction under CAFA

---

[2] The Court notes that citizenship of the class members should be judged from the time Plaintiff filed suit—not at the time the class members were students at Mercer University in the spring of 2020. *See* 28 U.S.C. § 1332(d)(7).

[3] In her Motion, Plaintiff specifically requested that the Court (1) provide the parties with 30 days of jurisdictional discovery and (2) stay or continue the hearing on Mercer's Motion to Dismiss until it is resolved. [Doc. 21, p. 5]. The Court denied Plaintiff's motion and went through with the hearing, discussing the jurisdictional issue prior to discussing the merits. [Doc. 23, p. 3]; [Doc. 24].

"because the matter in controversy exceeds the sum or value of $5,000,000" and "one or more of the other Class members are citizens of a State different from the Defendant."[4] [Doc. 1, ¶ 13]. Thus, Plaintiff swore under penalty of Rule 11 sanctions that her "factual contentions" establishing this Court's jurisdiction over this case "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b); *see Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1216 (11th Cir. 2007) ("By filing an action in federal court, the plaintiff is making a representation that the action belongs before the court."). The question is not whether the Court has jurisdiction. Under § 1332(d)(2), it certainly does. Plaintiff's Complaint says so, and Defendant agrees.[5] *See* [Doc. 1, ¶ 13]; [Doc. 22, p. 4]; [Doc. 21-2, p. 3]. The only question is this: Should the Court grant discovery now to determine whether—at a later stage of this case (that might never come), after the Court certifies a class and determines its precise makeup (which the Court might never do)—that an exception to its ordinary CAFA jurisdiction requires the Court to decline jurisdiction over this case? *See* 28 U.S.C. § 1332(d)(2) & (4).

However, to ascertain whether the home-state exception could someday remove

---

[4] Although not in the "Jurisdiction and Venue" section of Plaintiff's Complaint (but just before it), Plaintiff alleges that "Defendant's undergraduate and graduate programs include students from many, if not all, of the states in the country." [Doc. 1, ¶ 12]. This is a sufficient fact to support CAFA's diversity requirement. *See* 28 U.S.C. § 1332(d)(2).

[5] In fact, even Plaintiff maintains that she "affirmatively pled the existence of federal jurisdiction *and stands by that*." [Doc. 21-2, p. 3 (emphasis added)].

3

this case from the Court's jurisdiction, the Court would first need to determine the residencies of each member of the proposed class. In the Court's estimate, doing so would amount to certifying the class before the Court rules on Mercer's Motion to Dismiss. Because a class need not be certified before a court may assert original federal jurisdiction over the action under CAFA and because neither party disputes that Plaintiff alleged jurisdiction under CAFA, jurisdictional discovery is just unnecessary. *See id.* Simply put, the Court is not inclined to grant discovery only to determine whether it might in the future—upon determining the more precise makeup of the class during certification—need to decline to exercise jurisdiction.[6] *See id.*; *Lowery*, 483 F.3d at 1215–17 (denying a defendant's request for jurisdictional discovery where the defendant was the one who chose to remove the action to federal court). Accordingly, the Court **DENIES** Plaintiff's Motion to Engage in Limited Discovery [Doc. 21].

Now, the Court must turn to the substance of this case. For the following reasons, the Court **GRANTS** Mercer's Motion to Dismiss [Doc. 11] for failure to state a claim and **DISMISSES** Plaintiff's Complaint [Doc. 1] with prejudice under Federal Rule of Civil Procedure 12(b)(6).

---

[6] The very fact that CAFA *requires* a court to decline jurisdiction if it is later determined to have more than two-thirds of its class members from the same state as the primary defendant reinforces that the Court currently stands on solid jurisdictional grounds to rule on the merits of Mercer's Motion to Dismiss. Otherwise, it would not have to later decline jurisdiction.

## BACKGROUND[7]

Mercer University is a private university located in Macon, Georgia, founded in 1833, with a long history of providing an in-person educational experience. [Doc. 1, ¶¶ 11, 20]. However, beginning on March 15, 2020, the day after Governor Kemp signed an executive order declaring a Public Health State of Emergency due to the COVID-19 pandemic, Mercer invoked its Emergency Response Plan ("ERP") and transitioned to online classes. [*Id*. at ¶ 27]; *see* [Doc. 11-3, pp. 2–6]. From then until the semester ended on May 2, 2020, the university did not provide in-person instruction. [Doc. 1, ¶ 27].

Plaintiff was one of the approximately 8,500 students enrolled at Mercer during the spring of 2020 when the pandemic broke out. [*Id*. at ¶¶ 8, 50]. Prior to Plaintiff's enrollment, Mercer highlighted its in-person and on-campus educational services on its website and social media. [*Id*. at ¶¶ 32–33]. For example, Mercer's website stated: "Student life goes beyond the classroom – our Bears balance rigorous academics with membership in a wide range of student organizations and activities." [*Id*. at ¶ 34]. Additionally, Plaintiff and other students selected their classes based on the details listed in the course catalog, including delivery method and location. *See* [*id*. at ¶¶ 69–71]. Another key document that Plaintiff cites as supporting an implied agreement to

---

[7] Unless otherwise specified, the following facts are taken from Plaintiff's Complaint [Doc. 1] and are assumed to be true for the purpose of ruling on the Motion before the Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that when ruling on a 12(b)(6) motion, the Court must accept the facts set forth in the complaint as true).

provide in-person services is the Mercer University Catalog from 2019-2020, wherein the university stated its intent to provide "campus resources" and "a variety of intellectual, cultural, recreational and spiritual activities."[8] [*Id.* at ¶ 74]. Plaintiff alleges that these statements and materials persuaded her to enroll at Mercer instead of other universities. [*Id.* at ¶ 24].

To attend Mercer, Plaintiff paid approximately $37,508.00 in tuition for the year (approximately $18,754.00 for the spring semester), plus Mandatory Fees, including a $150 Facility and Technology Fee.[9] [*Id.* at ¶¶ 8, 17]. However, everything changed with the pandemic. Upon transitioning to online classes during the pandemic, Plaintiff claims that she was "denied access to facilities such as libraries, laboratories, computer labs, recitations, and study rooms." [*Id.* at ¶ 40]. Plaintiff alleges that Mercer priced the Mandatory fees based on the assumption that it would provide in-person services and allow access to such facilities, but yet, Mercer "has not refunded any portion of the

---

[8] Importantly, alongside its Motion to Dismiss, Defendant attaches two exhibits—both from the Catalog that Plaintiff references—that it contends reserved the right to relocate to online classes both generally and in the event of an emergency. *See* [Doc. 11, p. 13]; [Doc. 11-1]; [Doc. 11-2].

[9] On top of the $150 Facility and Technology Fee, Plaintiff's Complaint also mentions "Housing Fees of $2,750.00, a Health Insurance Premium of $996.00, and a Lab fee of $125.00." [Doc. 1, ¶ 8]. However, at one point in her Complaint, she states that Mandatory Fees were $150, and at another point, she calls the $150 facility and technology fees the "Mandatory Fees." [*Id.* at ¶¶ 2, 17]. And elsewhere, she alleges that Mercer "has not refunded any portion of the Mandatory Fees." [Id. at ¶ 44]. Defendant pointed out in its Motion to Dismiss that Plaintiff did not dispute Defendant's assumption that the definition of "Mandatory Fees" refers solely to the $150 facility and technology fee and thus requested that the Court dismiss any claim for any other fee. [Doc. 11, p. 6 n.1]. Defendant is right that Plaintiff did not dispute this definition in her Response, nor did her counsel dispute it at the June 17 hearing. *See generally* [Doc. 19]; [Doc. 24]. Accordingly, to the extent that Plaintiff intended to bring any other fee claims, the Court **DISMISSES** them.

6

Mandatory Fees it collected from Plaintiff and the members of the Class for the affected semester even though it closed or ceased operating the services and facilities for which the Mandatory Fees were intended to pay." [*Id*. at ¶¶ 42–44]. Likewise, she did not receive a pro-rated refund of her tuition. [*Id*. at ¶¶ 45, 81].

## LEGAL STANDARD

When ruling on a motion under Rule 12(b)(6), it is a cardinal rule that district courts must accept the factual allegations set forth in a complaint as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007). In accepting the factual allegations as true, courts are to construe the reasonable inferences from them in the light most favorable to the plaintiff. *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998).

However, through Rule 12(b)(6), a defendant may "test the facial sufficiency" of a complaint by way of a motion to dismiss. *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, at *2 (11th Cir. June 5, 2023) (quoting *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1368 (11th Cir. 1997)). Such a "motion is an 'assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint still fails as a matter of law to state a claim upon which relief may be granted.'" *Barreth v. Reyes 1, Inc.*, No. 5:19-cv-00320-TES, 2020 WL 4370137, at *2 (M.D. Ga. July 29, 2020) (citation omitted). A complaint survives a Rule 12(b)(6)-based motion only if it alleges sufficient factual matter (accepted as true) that states a claim for relief that is plausible on its face. *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S.

662, 678–79 (2009)).

Now, whether a complaint states a claim for relief is measured by reference to the pleading standard of Federal Rule of Civil Procedure 8—a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Barreth*, 2020 WL 4370137, at *2 (citation omitted). Rule 8 doesn't require detailed factual allegations, but it does require "more than unadorned, the-defendant-unlawfully-harmed-me accusations." *McCullough*, 907 F.3d at 1333 (citation omitted) (alterations adopted). Its sole purpose is to provide a defendant "with 'fair notice' of the claims and the 'grounds' for entitlement to relief." *Barreth*, 2020 WL 4370137, at *2 (citation omitted); *Twombly*, 550 U.S. at 555–56.

Courts use a two-step framework to decide whether a complaint survives a motion to dismiss. *McCullough*, 907 F.3d at 1333 (citation omitted). The first step is to identify the allegations that are "no more than conclusions." *Id.* (quoting *Iqbal*, 556 U.S. at 679). "Conclusory allegations are not entitled to the assumption of truth." *Id.* After disregarding the conclusory allegations, the second step is to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* "A court decides whether [Rule 8's pleading standard] is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that [a] plaintiff is entitled to the legal

8

remedy sought." *Barreth*, 2020 WL 4370137, at *2 (citation omitted).

When drafting a complaint, "[a] plaintiff must plead more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *McCullough*, 907 F.3d at 1333 (quoting *Twombly*, 550 U.S. at 555). A plaintiff may use legal conclusions to structure a complaint, but they "must be supported by factual allegations." *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 679). While courts, in ruling on a motion to dismiss, must take all of the factual allegations in a complaint as true, they are not bound to accept a legal conclusion couched as a factual allegation. *Iqbal*, 556 U.S. at 678. Courts must "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *McCullough*, 907 F.3d at 1333 (quoting *Iqbal*, 556 U.S. at 681).

The issue to be decided when considering a motion to dismiss "is necessarily a limited one." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) *overruled on other grounds by Davis v. Scheuer*, 468 U.S. 183 (1984). The issue is not whether the claimant will ultimately prevail, but "whether the claimant is entitled to offer evidence to support the claims." *Id.* The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "merely create[] a suspicion of a legally cognizable right of action." *Twombly*, 550 U.S. at 555.

9

**DISCUSSION**

Plaintiff's Complaint contains three claims: (1) breach of implied contract, (2) unjust enrichment, and (3) litigation expenses. First, under binding Eleventh Circuit precedent, Plaintiff fails to state a claim that Mercer breached any contractual obligations it may have had to its students. *See infra* Part I. Second, as a matter of law, Plaintiff cannot sustain an unjust enrichment claim where the parties do not dispute the existence of a contract between them. *See infra* Part II. Finally, because her underlying claims fail, Plaintiff's claim for litigation expenses must also fail. *See infra* Part III.

1. **Breach of Implied Contract**[10]

Neither party disputes that a contract existed between them. *See* [Doc. 11, p. 24 ("Mercer agrees that a contract existed between the parties . . . .")]. No doubt, Plaintiff paid tuition and fees to Defendant in exchange for a Mercer University education. *See* [*id.*]; [Doc. 1, ¶¶ 2, 8]. The question is whether Plaintiff states a claim that Defendant breached an implied provision of that contract to provide only in-person education and services. *See* [Doc. 1, ¶¶ 10, 19–20]; [Doc. 11, p. 7]. Due to binding Eleventh Circuit precedent, the Court agrees with Mercer: As a matter of law, even if the contract impliedly obligated Mercer to provide in-person services, that very same contract also

---

[10] Although Defendant argued in its Motion to Dismiss that Plaintiff failed to state a claim for both express and implied breach of contract claims, Plaintiff conceded at the June 17 hearing that she does not intend to proceed on an express breach of contract theory. [Doc. 24]; *see* [Doc. 11, pp. 8–10]. Accordingly, the Court **DISMISSES** any breach of express contract claim. Going forward, the Court will assume that Plaintiff's first claim for relief (entitled "Breach of Contract" in her Complaint) is for breach of an *implied* contract. *See* [Doc. 1, p. 15].

10

permitted Mercer to amend its procedures in the event of an emergency like the COVID-19 pandemic.[11] *See Dixon v. Univ. of Miami*, 75 F.4th 1204, 1208–10 (11th Cir. 2023). Thus, in light of the pandemic, Mercer cannot be said to have breached the agreement by transitioning to remote learning. *See id*.

Under Georgia law, "[a]n implied-in-fact contract is one not created or evidenced by distinct and explicit language, but inferred by the law as a matter of reason and justice." *Classic Restorations, Inc. v. Bean*, 272 S.E.2d 557, 562–63 (Ga. Ct. App. 1980). Here, Plaintiff argues that the inference can be drawn from Defendant's history of providing an on-campus experience in exchange for tuition and fees, as well as Mercer's promotional and marketing materials, course catalog, website, and other materials. [Doc. 19, p. 10 (citing [Doc. 1, ¶¶ 21, 29, 32–35, 59])]; *see Williams v. Corp. of Mercer Univ.*,

---

[11] Defendant also argues that its Refund Policy contained a condition precedent: To receive her tuition and fees back, Plaintiff needed to formally withdraw from her classes. [Doc. 11, p. 20]; *see* [Doc. 11-1, pp. 6–7]. Additionally, although neither party brought this up, she would have needed to formally withdraw before the last day of the drop/add period (which, in the spring semester of 2020 was January 10, 2020) in order to receive her fees back in full. [Doc. 11-1, pp. 5, 8]. However, although Defendant asserts that Plaintiff did not withdraw, Defendant cites to no paragraph of Plaintiff's Complaint nor any other piece of evidence to support the assertion. *See* [*id*. at pp. 20–24]. To be sure, Defendant attached the Refund Policy to its Motion to Dismiss—but no evidence of Plaintiff failing to withdraw. And the Court cannot identify any paragraph in Plaintiff's Complaint that supports Defendant's assertion without making big inferences in Defendant's favor. It is certainly acceptable to attach exhibits to a motion to dismiss without the Court having to convert it into a motion for summary judgment if, as here, the document is (1) central to the plaintiff's claim and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Accordingly, the Court considered Defendant's attached Catalog (including the Refund Policy) and ERP. However, the Court cannot consider Defendant's uncited and unsubstantiated assertions (namely, that Plaintiff failed to withdraw in time) as fact when ruling on a motion to dismiss, nor can it make inferences about Plaintiff's Complaint in Defendant's favor—even where, as here, Plaintiff didn't dispute the assertion that she didn't withdraw. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010) (explaining that when ruling on a motion to dismiss, courts "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor"). That said, even if it were substantiated, the Court need not reach a decision on the condition precedent today because Plaintiff's claim fails on other grounds.

542 F. Supp. 3d 1366, 1376–77 (M.D. Ga. 2021).

First, Plaintiff's Complaint does not adequately allege that the mandatory fees (namely, "$150 facility and technology fees") were intended to be paid in exchange for in-person services. *See* [Doc. 1, ¶ 2]. The only part of Plaintiff's Complaint that comes close to making such an allegation is Paragraph 28: "Most of the services *for which the Mandatory Fees were assessed* were also terminated or cancelled at or about this time, *such as access to University health and wellness facilities, programs or services; fitness facilities; and student events and sports*." [*Id.* at ¶ 28]. However, the Complaint contains no factual basis for the assertion that "the Mandatory Fees were intended to cover" the specific services she lists in her Complaint. *See* [*id.* at ¶¶ 4, 28]. It may "create[] a suspicion of a legally cognizable right of action," but the Court is not convinced that this allegation is "enough to raise a right to relief [regarding the fees] above the speculative level." *Twombly*, 550 U.S. at 545, 555. In sum, Plaintiff never offered any facts to show what the $150 fee actually covered. Rather, she simply listed what she assumed they covered—and that isn't enough. *See id*.

Next, Plaintiff asserts that Mercer's course catalog and course details, as well as marketing and promotional materials and other documents, support an implied contract. [*Id.* at ¶¶ 62, 68, 73–74]. However, even assuming that Plaintiff's alleged facts support an implied contract, the Court agrees with Defendant that the very documents Plaintiff relies on to establish that contract (in particular, Mercer's Catalog) also make

clear that Defendant retained a right to alter its method of course delivery in the event of an emergency. *See* [Doc. 11, p. 13].

Plaintiff relies heavily on a nearly identical case against the same Defendant. In *Williams v. Corporation of Mercer University*, Judge Gardner held that the Plaintiff, a Mercer student during the spring of 2020, sufficiently alleged a breach of contract to provide in-person education and services based on the parties' course of dealing and Mercer's catalog and marketing materials. 542 F. Supp. 3d at 1377. However, *Williams*, a 2021 case, came out two years before the Eleventh Circuit issued its 2023 opinion in *Dixon v. University of Miami*, which the Court believes controls here. *See* 75 F.4th at 1208–10.

In that case, the University of Miami defended against an implied breach of contract claim by pointing to two provisions in its Student Handbook. *Id*. at 1208. First, the Foreword read:

> From time to time it may be advisable for the University to alter or amend its procedures or policies. Reasonable notice may be furnished to the University community of any substantive changes, but is not required.

*Id*. at 1209. Second, a section of Miami's Student Code of Conduct stated:

> The University of Miami reserves the right at any time to deny, revoke, or modify authorization to use any University facility or premises.
>
> Decisions to authorize use of University facilities are made by the appropriate facility coordinator. Decisions to deny, revoke, or modify the authorization to use University facilities, because of potential danger, are made by the President of the University upon recommendation by the Vice President and/or the appropriate administrator involved with use of such University

facilities.

*Id*. The Circuit held that together, these two provisions "*unambiguously* g[a]ve Miami the authority to temporarily close its campuses in response to the COVID-19 pandemic." *Id*. (emphasis added).

Likewise, Mercer points to two provisions from its catalog—one of the very documents that Plaintiff argues supports an implied contract—that it contends work in tandem to show Mercer retained a "right to alter its method of course delivery, both generally and in emergencies." [Doc. 11, p. 13]. First, Mercer's Student Catalog states:

> The University, nevertheless, hereby gives notice that it reserves the right to withdraw any subject, *to change its rules affecting* the admission and retention of students or *the granting of credit or degrees*, or to alter its fees and other charges, whenever such changes are adjudged by it to be desirable or necessary.[12]

[Doc. 11-1, p. 3 (emphases added)]. Second, Mercer's Emergency Response Plan ("ERP") reads:

> The Mercer University Emergency Response Plan provides a management framework for an institutional response *to a broad range of major emergencies* that *may threaten life, health, and safety* of the University community, and/or cause major disruption of programs, operations, or special events.
>
> In *all emergency situations*, Mercer University priorities are:
>
> 1. To protect life, health, and safety of the University community
>
> 2. To secure critical infrastructure and facilities for continuous management operations

---

[12] At the hearing on June 17, 2024, Mercer maintained that contained in Mercer's right to "change its rules affecting . . . the granting of credit or degrees" is a right to require online attendance to receive credit for a class. *See* [Doc. 24].

> 3. To resume academic, research, and associated University programs and activities . . .
>
> EMERGENCY RESPONSE ACTIVITIES . . .
>
> • If necessary, authorize a temporary suspension of classes, campus evacuation, or closure.
>
> • Plan the resumption *or relocation* of University activities . . .
>
> PLAN DE-ACTIVATION
>
> When emergency conditions are stabilized and normal University operations can resume, the Emergency Response Plan will be de-activated by the President or his designee. A formal announcement will be disseminated, using all emergency information and notification systems.
>
> If the nature of the incident requires an extension of some emergency services, limited EOC functions may be continued to coordinate those services among selected administration and academic units.
>
> Continuing functions may include: . . .
>
> • Academic or administrative space adjustments[.]

[Doc. 11-2, pp. 4, 6, 8 (emphases added)]. The first of Mercer's two provisions, the Court grants, is slightly weaker than Miami's first provision—but its second provision is much stronger than Miami's. *See Dixon*, 75 F.4th at 1209; [Doc. 11-1, p. 3]. Mercer's second provision is not from a student code of conduct, as in *Dixon*, but from an aptly titled "Emergency Response Plan" that expressly contemplates a "broad range of major emergencies." [Doc. 11-2, p. 4]. Certainly, a pandemic (and an officially declared public health emergency) qualifies as an emergency under the ERP. *See* [Doc. 11-3, pp. 2–6 (Governor Kemp declaring a Public Health State of Emergency by executive order on March 14, 2020)].

In both her Response to Mercer's Motion to Dismiss and again at the hearing, Plaintiff argued that *Dixon* was decided on a motion for summary judgment, not a motion to dismiss as here. [Doc. 19, p. 13]; [Doc. 24]. However, under the present circumstances, this is a distinction without difference. The only question is, assuming *all* of the facts in Plaintiff's Complaint are true, whether her claims fail as a matter of law. *See Twombly*, 550 U.S. at 572. Looking at *Dixon*, the Court sees no answer to that question other than a resounding "yes." Given that Mercer's language reserving its rights is even clearer (and more clearly applicable to the pandemic) than the University of Miami's, the Court now simply applies *Dixon*. "Accordingly, even if [Mercer's] contract included a provision for in-person classes and access to campus facilities, . . . [Mercer] cannot be held liable for switching to remote learning at the time and under the conditions that it did." *Dixon*, 75 F.4th at 1210. Thus, the Court **GRANTS** Mercer's Motion to Dismiss [Doc. 11] and **DISMISSES** Plaintiff's breach of implied contract claim.[13]

### 2. Unjust Enrichment

In the alternative to a breach of contract claim, Plaintiff brings a claim for unjust enrichment. [Doc. 1, p. 19]. Although Georgia law ordinarily precludes unjust enrichment claims where an express or implied contract exists, Plaintiff contends that

---

[13] Having resolved this case on Mercer's first ground of its Motion to Dismiss, the Court sees no reason to address any of the other grounds Mercer asserted for dismissal.

she is allowed to plead her unjust enrichment claim in the alternative because Mercer disputes that there is an implied contract to provide in-person services in exchange for tuition and fees. [Doc. 19, p. 16]; *but see Davidson v. Maraj*, 609 F. App'x 994, 998 (11th Cir. 2015) (citing *Yoh v. Daniel*, 497 S.E.2d 392, 394 (Ga. Ct. App. 1998); and then citing *Watson v. Sierra Contracting Corp.*, 485 S.E.2d 563, 570 (Ga. Ct. App. 1997)); [Doc. 11, p. 24 (arguing that Mercer does not dispute the existence of a contract but simply disagrees that the contract contained an implied provision to provide in-person instruction and services)].

However, as explained in detail above, the Court never determined that an implied contract did not exist between the parties. Rather, the Court's decision turned on the fact that, to the extent that such an implied contract existed, the very same documents establishing the implied contract also reserved Mercer's right to transition to remote learning. *See supra* Part 1. In other words, the Court followed *Iqbal* and *Twombly* and assumed that Plaintiff had properly pled that an implied contract for in-person classes and access to campus facilities existed—but even so, Mercer did not breach it. Therefore, as a matter of Georgia law, Plaintiff's unjust enrichment claim fails. *See Davidson*, 609 F. App'x at 998 (noting that a complaint that "must be read as evincing some type of contract between" the parties "preclude[es] an unjust-enrichment claim").

### 3. <u>Litigation Expenses</u>

Finally, Plaintiff brings a claim for expenses of litigation pursuant to O.C.G.A. §

13-6-11. [Doc. 1, p. 21]. However, "[a] prerequisite to any award of attorney fees under O.C.G.A. § 13-6-11 is the award of damages or other relief on the underlying claim." *United Cos. Lending Corp. v. Peacock*, 475 S.E.2d 601, 602 (1996). Because none of Plaintiff's underlying claims survive Defendant's Motion to Dismiss, her final claim also cannot survive. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1316 (11th Cir. 2004).

## CONCLUSION

In sum, even assuming that the parties had an implied contract to provide in-person services in exchange for tuition, Mercer unambiguously reserved the right to alter its procedures and method of course delivery in the event of an emergency like the COVID-19 pandemic. Therefore, Plaintiff fails to allege that Defendant breached the contract. Additionally, Plaintiff cannot plead an unjust enrichment claim because the parties do not dispute the existence of a contract, and Plaintiff cannot recover litigation expenses because none of her claims survive this Motion to Dismiss. Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss [Doc. 11] for failure to state a claim and **DISMISSES** Plaintiff's Complaint [Doc. 1] **with prejudice**.[14]

---

[14] In the introduction of her Response to the Defendant's Motion to Dismiss, Plaintiff requests that, if the Court is inclined to grant Defendant's Motion, it does so "without prejudice and with leave to file an amended complaint." [Doc. 19, p. 6]. However, "where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." *Newton v. Duke Energy Florida, LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018). Because Plaintiff's one-sentence request is buried in her Response to the Defendant's Motion to Dismiss, she did not properly raise it. *See id*. The Court's dismissal of Plaintiff's Complaint will function as a dismissal on the merits. *See Eiber Radiology, Inc. v. Toshiba Am. Med. Sys., Inc.*, 673 F. App'x 925, 930 (11th Cir. 2016) (noting the propriety of dismissal

**SO ORDERED**, this 21st day of June, 2024.

                                              S/ Tilman E. Self, III
                                              **TILMAN E. SELF, III, JUDGE**
                                              **UNITED STATES DISTRICT COURT**

---

with prejudice "where a counseled plaintiff has failed to cure a deficient pleading after having been offered ample opportunity to do so"); *Herederos de Roberto Gomez Cabrera, LLC v. Teck Res. Ltd.*, No. 20-21630-CIV, 2021 WL 3054908, at *2 (S.D. Fla. July 20, 2021) (explaining that a motion to dismiss puts a plaintiff on notice that the complaint may be deficient).